Anthony R. Corso, J.
In this case, the defendant is charged with custodial interference in the second degree, a class A misdemeanor (Penal Law, § 135.45).
After a nonjury trial, the court makes the following findings of fact. Defendant and complainant were divorced on March 26, 1975, at which time the complainant wife was awarded custody of the six children of the marriage, including their son, Gerard, the child involved in this incident. At the time of the incident, Gerard was one week shy of his fourteenth birthday.
On February 13, 1977, Gerard left the complainant’s home after a disagreement with the latter’s present husband. At approximately 5:00 p.m. on that date, complainant notified the police that her son was missing and at 6:30 p.m. one of her other childen notified the defendant that Gerard had "run away.” The following day, February 14, 1977, at 2:30 a.m., *499 Gerard appeared at his father’s home (30 miles away) and explained that he had "run away” and wanted to stay with the defendant because he was afraid to go back to the complainant and her new husband.
The defendant put his son to bed and then called the complainant to advise her that their son was with him, but a discussion concerning arrangements to have Gerard brought home was postponed until later in the day. Some time between 7:30 and 9:00 a.m. the complainant called about these arrangements and was advised by the defendant that Gerard was still sleeping. He explained that he wanted to discuss the matter with Gerard to ascertain why he had "run away” and would contact the complainant after he had done so.
At approximately 4:30 p.m. on February 14, the complainant swore to the information that is the basis of this charge because the defendant had not called her to arrange for the child’s return. However, in the interim, the defendant, after discussing the problem with his son, had taken the child to Suffolk County Family Court Probation Department for advice and guidance. There, defendant decided to attempt to obtain legal custody of his son, and on the following day, the 15th, he consulted his attorney who subsequently sought and obtained an order to show cause on February 17, which contained a provision staying the complainant from removing the child from the defendant’s home. On March 16, 1977, a hearing was held on that application, after which the defendant was awarded temporary custody of the infant, Gerard.
The issue before this court is whether the defendant’s action in seeking legal custody between the time the complainant asked for the child on February 14, and the issuance of the stay on February 17, constitutes the crime of custodial interference in the second degree. This court thinks not.
In order to establish the crime of custodial interference in the second degree, it must be shown, inter alla, that "knowing that he has no legal right * * * he takes or entices such child from his lawful custodian” (Penal Law, § 135.45, subd 1). The evidence failed to establish any taking or enticing on the part of the defendant. It was the child who left home of his own volition after a dispute with his mother’s new husband. Nor did the defendant entice his son to remain after he suddenly appeared at defendant’s home in the early hours of the morning. Again, it was the child who expressed a fear of and a refusal to return home. Faced with this situation, defendant *500 immediately sought legal advice and assistance through the Family Court and later from the Supreme Court. Under these circumstances, pursuit of one’s legal remedy can hardly be equated with the criminal conduct the statute was intended to proscribe.
Moreover, the crime of which the defendant is accused mandates that it be established that he acted "intending to hold such child permanently * * * knowing that he has no legal right to do so” (Penal Law, § 135.45, subd 1). Generally, criminal statutes are presumed to cover only intentional acts (McKinney’s Cons Laws of NY, Book 1, Statutes, § 274) and a person acts intentionally when his conscious objective is to cause a result or engage in conduct proscribed by the statute (Penal Law, § 15.05). The court finds no criminal intent in the acts of the defendant. While it may be argued that the defendant should have returned his son to the mother and then sought his legal remedies, the failure to do so under the circumstances herein, fails to establish the necessary criminal intent required by the statute. In light of the son’s threat to "run away” again if returned home, and aware of the dangers involved in such conduct, defendant’s immediate pursuit of his legal remedies establishes, not a criminal intent to withhold custody, but rather an intent to resolve the matter of custody legally by a proper application to the court which had initially determined the son’s status. It could not have been the legislative intent to render such conduct criminal and this court so finds.
This court is further of the opinion that this matter should be dismissed in the furtherance of justice (CPL 170.40). In this regard, the time limits contained in the statute (CPL 170.30, subd 2; 255.20) are held not applicable to a dismissal on the court’s own initiative (CPL 170.40, subd 2). This court is convinced that the defendant acted in good faith in his attempt to preserve the well-being of his son, which is evidenced by the fact that he utilized the civil remedies opened to him within such a short period of time.
In furtherance of such dismssal this court is guided by the consideration as set down in People v Clayton (41 AD2d 204). The nature of the alleged crime before us is neither repulsive nor a violation of a malum per se crime; there is found to be a sharp question of law and fact; the defendant has no prior record of a criminal nature; the defendant has already incurred a punishment in that he has lost custody of all his *501 children and has incurred additional attorney fees in order to legally attain custody of his son; there is no purpose and there would be no effect of punishing the defendant any further. It is obvious that the defendant would be prejudiced if he is convicted of the crime by his "so called criminal activities” when in fact he was using a legal remedy with his son’s best interest at heart. Finally, the impact on the public of such a dismissal is nil. It could be said that the opposite may be true in the final analysis.
In passing it is to be stated that this court does not appreciate the acts of the complainant in utilizing the Penal Law and the criminal courts to produce a result that could have been accomplished by the use of civil remedies available to her. If the defendant’s acts were so serious and detrimental both to society and to the son, such civil relief would have been swifter and more practical.
Therefore, for all of the reasons stated herein the defendant is found to be not guilty.